## EXPRESS COMPANY *v.* RAILROAD COMPANY.

A contract between A., a railroad company, and B., an express company, stipulated that B. should lend A. $20,000, to be expended in repairing and equipping its road, and that A. should grant to B. the necessary privileges and facilities for the transaction of all the express business over the road, the sum found to be due A. therefor, upon monthly settlement of accounts, to be applied to the payment of the loan and the interest thereon. The contract was to continue for one year, when, if the money with interest thereon was not paid, it was to continue in force until payment should be made. After B. had advanced the money, and entered upon the performance of the contract, A. conveyed all its property, including its franchises, to C. in trust to secure the payment of certain bonds issued by it. Default having been made in their payment, C. brought a foreclosure suit, and obtained a decree placing the road in the hands of a receiver and ordering its sale. The receiver having declined to carry out the contract with B., the latter, with the consent of the court, brought its bill in equity for specific performance against him, A., and C.  *Held*, 1. That the receiver is the only necessary party defendant. 2. That the transaction between the companies is not a license, but simply a contract for transportation creating no lien, the specific performance whereof would be a form of satisfaction or payment, which the receiver cannot be required to make.

APPEAL from the Circuit Court of the United States for the Western District of North Carolina.

This is a bill in equity, filed June 18, 1875, by the Southern Express Company, a corporation of Georgia, against the Western North Carolina Railroad Company, a corporation of North Carolina, W. A. Smith, and Henry Clews, for the specific performance of a contract entered into Dec. 2, 1865, between the railroad company and the complainant.

The bill alleges that the railroad company was organized for the purpose of constructing a railroad from Salisbury, North Carolina, to a point on the Tennessee line; that it completed that portion of its line between Salisbury and Morganton, and put it in running order; that the road-bed, rolling-stock, &c., became dilapidated during the war, and that the company in 1865 was without the means to repair the road and make it safe for the transportation of passengers and freight; that the company, having been unsuccessful elsewhere, applied to the complainant for a loan or advance of $20,000; that the complainant having agreed to loan or advance that sum in consideration of securing the exclusive privilege of transporting freights over said road as far as Morganton, and of certain other advantages, entered, with the advice and consent of the stockholders of the railroad company, into the following contract with that company: —

"This indenture of agreement, made and entered into this second day of December, A. D. eighteen hundred and sixty-five, between the Western North Carolina Railroad Company, as party of the first part, and the Southern Express Company, as party of the second part, witnesseth as follows: —

"Whereas the party of the second part has agreed to loan and advance to the party of the first part the sum of twenty thousand ($20,000) dollars upon the notes of said railroad company, bearing interest at the rate of six per cent per annum, which sum is to be expended in repairs and equipments for said road. And whereas the party of the first part is desirous of securing the services of an efficient and responsible agent for the transaction of all of the express business over its road, and is willing to provide the requisite facilities for the proper transaction of said express business in the manner and upon the terms hereinafter specified:

"Now, therefore, in consideration of said loan and advance, and the rents, covenants, and agreements hereinafter made and provided, said party of the first part hereby agrees and binds itself to grant to the said party of the second part the necessary privileges and requisite facilities for the transaction of all the express business over the entire length of their road, extending from Salisbury to Morganton, in North Carolina, and furnish such facilities by all its passenger trains running each way over its road as may be necessary to forward without delay all the express matter that may be

offered by said party of the second part, and to do all in its power to promote the convenience of said party of the second part in the transaction of its express business, both at way and terminal stations.

"Said party of the second part agrees to load and unload said express matter by its own agents, at its own proper costs and charges, and save harmless said party of the first part against all claims for loss and damage to the express matter of the party of the second part, except that which occurs from the negligence and carelessness of said party of the first part or its agents.

"The said party of the first part agrees to carry free of charge the messengers in charge of express matter and the officers and agents of the said party of the second part passing over the road upon express business. The said party of the second part agrees to pay to the said party of the first part fifty cents per hundred pounds for all express matter carried over the road. An account of the weights of all express matter shall be taken by said party of the first part whenever they shall see fit to do so, and delivered to the agent of the party of the first part, weekly or monthly, as may be desired.

"The accounts for transportation to be made up monthly, and the sum found to be due to said railroad company for transportation, at the rate hereinafter specified, shall be applied monthly toward the payment of said twenty thousand ($20,000) dollars, until the whole sum, with interest, is paid, after which payments for transportation shall be made by said party of the second part monthly in cash.

"This contract shall remain in force for the full term of one year, from the first day of January, eighteen hundred and sixty-six. If the said sum of twenty thousand ($20,000) dollars, with interest thereon, shall not have been repaid to the said second party at the expiration of said one year, this contract shall continue in force for a further period, and until the whole of said twenty thousand ($20,000) dollars, with interest thereon, shall have been repaid. And the said party of the first part hereby covenants and agrees that it will not furnish express privileges over said road to any other parties during the existence of this contract on any more favorable terms than those herein made with the said party of the second part, both as to rate of transportation paid, advance payments, and total amount paid per annum. It is mutually covenanted and agreed by the parties hereto that any other contracts that may now exist, whether verbal or written, for express service

between the parties hereto, shall terminate and cease on the thirty-first day of December, eighteen hundred and sixty-five, at which time this contract shall take effect.

"In witness whereof, the parties to these presents have hereunto set their hands and seals the day and year first above written.

"Tod R. Caldwell,
*"Pres't W. N. C. R. R. Co.*
"H. B. Plant,
*" Pres't Southern Express Company."*

The bill then alleges that the $20,000 was paid in compliance with the contract, and that shortly thereafter the complainant entered upon the road, transported freight according to the terms of the contract, kept regular accounts and exhibited them to the company, which were always approved, and it continued to act under said contract until July, 1873; that in 1870 the railroad company conveyed to Tod R. Caldwell and Henry Clews, as joint tenants, and to the survivor of each, — the former of whom has since deceased, — all its real and personal property, including its franchises, in trust, to secure a large number of its bonds then about to be issued; that $1,400,000 of said bonds were sold or hypothecated, and came into the hands of persons unknown to the complainant, but for much less than their value and not by a *bona fide* sale; that, notwithstanding, the alleged creditors of the company instituted foreclosure proceedings in the Circuit Court of the United States for the Western District of North Carolina, and in 1873 obtained a decree ordering the sale of all the property of said company; that the defendant, Smith, having in that suit been appointed receiver of the company, forbade the complainant, in July, 1873, from further using the cars of the company, unless upon conditions whereby said contract was virtually surrendered or ignored; that thereupon the complainant was compelled to abandon said railroad, although the money so loaned, with a portion of the interest thereon, is still due and unpaid. It then alleges that the suit is brought with the consent of said court, and with the privilege of making such parties defendant as might be deemed necessary for that purpose; that the trustees in the mortgage to secure the bonds of the railroad company had express notice

of the contract when they accepted the trust, and that it was claimed by the complainant as an existing lien; that the substance of said contract had been published separately at the instance of the stockholders of the railroad company, and was well known to its creditors and to the purchasers of its bonds at the time, and especially to the defendant Smith; and that the railroad company having conveyed away its property, and being in part insolvent, the violation of the contract cannot be compensated by any damages which would be recovered at law. The bill therefore prays for a decree compelling the railroad company to specifically perform its contract, and for such other and further relief as the nature and circumstances of the case may require, and for process against the defendants.

The charter of the railroad company granted in February, 1855, is annexed to the bill and made a part thereof. Its twenty-fifth and twenty-sixth sections are as follows : —

" SECT. 25. Be it further enacted, that the said company shall have the exclusive right of conveyance, transportation of persons, goods, merchandise, and produce over the said railroad, to be by them constructed, at such charges as may be fixed on by the board of directors.

" SECT. 26. Be it further enacted, that said company may, when they see fit, farm out their right of transportation over said railroad, subject to the rules above mentioned; and the said company and every one who may have received from it the right of transportation of goods, wares, and merchandise over the said railroad, shall be deemed and taken to be a common carrier, as respects all goods, wares, produce, and merchandise intrusted to them for transportation."

At rule-day in July, 1875, the writ of subpœna was returned executed, and the cause continued until the October Term, when it was ordered that the commissioners in possession of the road in the western district of North Carolina, and Howerton, president of the company, be notified to appear and answer or demur to the bill of complaint at rule-day in January, 1876. The commissioners appeared and demurred. The demurrer was sustained and the bill dismissed. The express company then brought the case here.

Mr. *Clarence A. Seward* for the appellant.

The bill avers that the trustees in the mortgage had notice of the existence of the contract between the companies, and this fact is admitted by the demurrer. Caldwell, who executed the contract, was also one of the trustees in the mortgage, and he, therefore, as trustee, knew that he had executed the contract as president. *Ex parte Rogers*, 8 De G., M. & G. 271; *Weetjen* v. *St. Paul, &c.*, 4 Hun (N. Y.), 529. Notice to him was, in judgment of law, notice to all the trustees. *Smith* v. *Smith*, 2 Cromp. & M. 230; *Willes* v. *Greenhill*, 4 De G., F. & J. 147; *Mandeville* v. *Reed*, 13 Abb. (N. Y.) Pr. 173.

As between the two companies the contract was valid. It was lawful for the express company to agree to look for its remuneration to the fund arising from the transportation of its freight over the road of the railroad company; and having made an agreement so to resort to such fund, equity would compel it to perform such agreement, and restrain it from prosecuting a suit at law.

The railroad company having authorized the express company to carry its freight, and specifically appropriated the moneys for such transportation when they came to the hands of the express company to the repayment of the loan, thereby constituted a fund in the hands of the express company, which the railroad company could not impair, divert, or waste. *Ketchum* v. *Union Pacific*, 4 Dill. 78; *Bird* v. *Hall*, 30 Mich. 37.

The contract created as between the companies an equitable lien upon the right of transportation, and upon an accruing fund, which equity will enforce as against all parties having notice thereof. *Groton* v. *Gardiner*, 11 R. I. 626; *Smithurst* v. *Edmunds*, 14 N. J. Eq. 408; *Butt* v. *Ellett*, 19 Wall. 544; *Pennock* v. *Coe*, 23 How. 117; *Dunham* v. *Railway Company*, 1 Wall. 254. If it may mortgage the property *per se*, no good reason is perceived why it may not, upon the use of the property, create an equitable lien which can be enforced against all subsequent purchasers who had notice of its existence.

The contract was a license for the enjoyment of the occupancy of way and terminal stations, and of the vehicles of the railway company while in transit. Such license was executed

by the express company so far as an advance payment of rent was concerned. The payment is called rent in the contract. Such license could not be revoked by the railroad company, or by those who purchased, or had notice prior to the attachment of their interest of the existence of such license. *Winter* v. *Brockwell*, 8 East, 308; *Taylor* v. *Waters*, 7 Taunt. 374; *Wood* v. *Lake*, Say. 103; *Ameriscoggin Company* v. *Bragg*, 11 N. H. 108.

The owner in fee of land may, by covenant, impose upon it any burden, not inconsistent with his general right of ownership, which is not in violation of public policy, and does not injuriously affect the rights or the property of others. *Van Rensselaer* v. *Albany*, 1 Hun (N. Y.), 507. Here the railroad company, by an instrument under seal, and without violating public policy, imposed upon its road the burden of occupancy of its stations and vehicles by the express company for a specific period, at a designated rent paid in advance.

As long as the owner of the fee retains the title in himself, his covenants and agreements respecting the use and enjoyment of his estate will be binding on him personally. A purchaser with notice is bound to perform them. *Parker* v. *Nightingale*, 6 Allen (Mass.), 344.

A court of equity can grant the relief prayed for not only by injunction, but by a decree for specific performance. *Mechanics' Bank of Alexandria* v. *Seton*, 1 Pet. 299; *Clark* v. *Flint*, 22 Pick. (Mass.) 231; *Barnes* v. *Barnes*, 65 N. C. 261; *Parker* v. *Winnipiseogee Company*, 2 Black, 545; *Kirkpatrick* v. *Peshine*, 24 N. J. Eq. 206; *Trustees* v. *Lynch*, 70 N. Y. 440; *Laning* v. *Cole*, 3 Green (N. J.), Ch. 229; *Shirman* v. *Morris Company*, 27 N. J. Eq. 264; *Errington* v. *Aynesley*, 2 Bro. C. C. 341; *Phillips* v. *Berger*, 2 Barb. (N. Y.) 608; *Withy* v. *Cottle*, 1 Sim. & St. 174; *Adderley* v. *Dixon*, id. 607; Story, Eq., sect. 723; *Storer* v. *The Great Western Company*, 2 You. & Coll. 48; *Wilson* v. *Furness Company*, Law Rep. 9 Eq. 28; *Ball* v. *Coggs*, 1 Bro. P. C. 296; *Price* v. *Mayor*, 4 Hare, 505; *Sanderson* v. *Cockermouth Company*, 11 Beav. 497; *Great Northern Company* v. *Manchester Company*, 5 De G. & Sm. 138; *Greene* v. *West Cheshire Company*, Law Rep. 13 Eq. 44; *Hood*

v. *Northeastern Company*, 8 id. 666; *Raphael* v. *Thames Valley Company*, Law Rep. 2 Ch. 147; *Lytton* v. *Great Northern Company*, 2 Kay & J. 394; *Dorsey* v. *St. Louis Company*, 58 Ill. 65; *Lloyd* v. *London Company*, 2 De G. & Sm. 568; *Johnstown* v. *Veghte*, 69 N. Y. 16; *Amedon* v. *Harris*, 113 Mass. 59; *Taylor* v. *Waters*, 7 Taunt. 39; *Colt* v. *Netherville*, 2 P. W. 304; *Buxton* v. *Lister*, 3 Atk. 387; *Rerick* v. *Kern*, 14 Serg. & R. (Pa.) 267; *Thurman* v. *Clark*, 3 Stock. (N. J.) 306; *Clavering* v. *Clavering*, Mos. 224; *Wilson* v. *Wilson*, 14 Sim. 405, affirmed 5 H. of L. Cas. 40; *Pembroke* v. *Thorpe*, 3 Swans. 436, 443; *Nelson* v. *Bridges*, 1 Jur. N. S. 753; *Anon.*, 2 Free. Ch. 253; *Thomson* v. *Harcourt*, 2 Bro. P. C. 415; *Odessa Tramways Co.* v. *Mendall*, 37 L. J. N. S. 275.

A receiver has, prior to a final decree, no larger rights than those which appertain to the owner of the property sequestered. If the property in the possession of the owners was lawfully incumbered, he cannot, *sua sponte*, and without judicial proceedings, dispute such incumbrance. *Receivers* v. *Patterson*, 3 Zab. (N. J.) 283; *Hyde* v. *Lynde*, 4 N. Y. 387; *Bell* v. *Shipley*, 33 Barb. (N. Y.) 610; *Lincoln* v. *Fitch*, 42 Me. 456.

The railroad company was properly made a defendant. At the time of suit brought, it was the owner in fee of the right of way, and the sole owner of the rolling-stock, the right to use which was granted by the contract. *Railroad Company* v. *Orr*, 18 Wall. 471; *Mechanics' Bank of Alexandria* v. *Seton*, 1 Pet. 299; *Story* v. *Livingston*, id. 357.

*Mr. A. S. Merrimon, contra.*

Mr. Justice Swayne delivered the opinion of the court.

The bill avers that it was filed against the receiver appointed by the court below, that he was in possession of the railroad, and that the institution of the suit was by the consent of the court. Without this latter fact the bill could not have been filed or maintained. The suit would have been a contempt of the court which had appointed the receiver, and punishable as such. *Davis* v. *Gray*, 16 Wall. 203.

The citizenship of the complainant corporation is sufficiently averred. *Express Company* v. *Kountz Brothers*, 8 id. 342.

Such a complainant need not prove its existence, unless the fact is directly put in issue by the defendant. *The Society for the Propagation, &c.* v. *The Town of Paulet*, 4 Pet. 480.

To the objection that the requisite corporate power of the complainant is not shown, there are two answers. The contract of a corporation is presumed to be *infra vires*, until the contrary is made to appear. 2 Waite, Actions and Defences, 334.

The charter is set out in the record, and forms a part of it. That leaves no room for doubt upon the subject.

Adequate capacity on the part of the railroad company to make the contract is to be presumed in like manner.

No party defendant was necessary but the receiver. He was in the possession of the property and effects of the railroad company, subject to the order of the court, and could have specifically performed the contract, or paid back the money loaned if the court had so directed. The presence of the other parties was immaterial, and the bill might well have been dismissed as to them. *Davis* v. *Gray, supra; Doggett* v. *Railroad Company, supra*, p. 72.

The contract between the express company and the railroad company was that the latter should give to the former the necessary facilities for the transaction of all its business upon the road, forward without delay by the passenger trains both ways all the express matter that should be offered, do all in its power to promote the convenience of the express company, both at the way and terminal stations, and carry free of charge the messengers in charge of the express matter, and the officers and agents of the express company passing over the road on express business. The consideration for these stipulations was a loan by the express company to the railroad company of $20,000, to be expended in repairs and equipments for the road, the loan to bear interest at the rate of six per cent per annum, and the payment of fifty cents per hundred pounds for all express matter carried over the road, to be applied in discharge of the loan and interest. The contract was to continue for one year from the first day of January, 1866, and until the principal and interest of the debt should be fully paid. The bill avers that the receiver had refused to carry out the contract,

and that the principal of $20,000 and a part of the interest were unpaid.

The enforcement of contracts not relating to realty by a decree for specific performance is not an unusual exercise of equity jurisdiction. Such cases are numerous in both English and American jurisprudence. They proceed upon the ground that under the circumstances a judgment at law would not meet the demands of justice, that it would be less beneficial than relief in equity, that the damages would not be an accurate satisfaction, that their extent could not be exactly shown, or that the pursuit of the legal remedy would be attended otherwise with doubt and difficulty.

Judge Story, after an elaborate examination of the subject, thus lays down the general rule : " The just conclusion in all such cases would seem to be that courts of equity ought not to decline the jurisdiction for a specific performance of contracts whenever the remedy at law is doubtful in its nature, extent, operation, or adequacy." 2 Story, Eq. Jur., sect. 728. See also *Stuyvesant* v. *The Mayor, &c. of New York*, 11 Paige (N. Y.), 414; *Barr* v. *Lapsley*, 1 Wheat. 151; *Storer* v. *The Great Western Railway Co.*, 2 You. & Coll. 48; *Wilson* v. *Furness Railroad Co.*, Law Rep. 9 Eq. 28.

But we need not pursue the subject further, because there is one provision of the contract in this case which is fatal to the relief sought. A court of equity never interferes where the power of revocation exists. Frye, Specif. Perform. 64.

The contract stipulates that after the first year it shall cease upon the payment of the $20,000 and interest. This might be made immediately upon the rendition of the decree. The action of the court would thus become a nullity.

There is another objection to the appellant's case which is no less conclusive.

The road is in the hands of the receiver appointed in a suit brought by the bondholders to foreclose their mortgage. The appellant has no lien. The contract neither expressly nor by implication touches that subject. It is not a license as insisted by counsel. It is simply a contract for the transportation of persons and property over the road. A specific performance by the receiver would be a form of satisfaction or payment

which he cannot be required to make.  As well might he be decreed to satisfy the appellant's demand by money, as by the service sought to be enforced.  Both belong to the lien-holders, and neither can thus be diverted.

The appellant can, therefore, have no *locus standi* in a court of equity.

Both these objections appear by its own showing.  It was, therefore, competent and proper for the court below, *sua sponte*, to dismiss the bill for the want of equity upon its face.  *Brown et al.* v. *Piper*, 91 U. S. 37.

*Decree affirmed.*