## COMMERCIAL PUB. CO. v. BECKWITH.

(Supreme Court, Appellate Division, First Department. December 30, 1898.)

1. AGENCY—ADVERTISEMENTS—COMMISSION—LIEN.

An agent made a loan to a newspaper, and was to solicit advertisements on commission, and out of the proceeds retain not to exceed a certain sum each month to repay himself. The paper went into the hands of a receiver, who refused to recognize the agency, but printed the advertisements. *Held,* that the agent had no lien for his debt on the money received by him in payment for advertisements printed by the receiver, and hence could not retain it.

2. DECREE—ESTOPPEL—PARTIES.
    A decree affirming a receiver's sale of a newspaper provided that all ac-
    counts due the receiver by reason of his operating the paper should pass
    to the purchaser, and held that an advertising agent obtaining a judgment
    against the paper for a debt did not acquire a lien on the proceeds of the
    sale by reason of his execution.  *Held,* that the agent's right, he being a
    party, to retain for his debt payments for advertising secured under his
    contract with the paper, which permitted it, but printed by the receiver.
    was adjudicated, and he could not question the purchaser's right to such
    payments in other litigation.
        Ingraham and O'Brien, JJ., dissenting.

Appeal from trial term, New York county.

Action by the Commercial Publishing Company against Samuel C.
Beckwith.   There was a judgment for defendant, and plaintiff's mo-
tion for new trial on exceptions was ordered to be heard in the first
instance by the appellate division, and he appeals.   Exceptions sus-
tained.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTER-
SON, O'BRIEN, and INGRAHAM, JJ.

Walker Otis, for appellant.
Anthony B. Porter, for respondent.

McLAUGHLIN, J.   This action was brought to recover a sum of
money alleged to have been wrongfully appropriated by the defend-
ant.   At the close of the trial, there being no dispute as to the facts,
the plaintiff asked that a verdict be directed in its favor, which was
denied.   A similar motion was then made by the defendant, and
granted, and plaintiff's exception thereto ordered to be heard in the
first instance by the appellate division.   In order to determine whether
this ruling of the trial court was correct, it is necessary to consider
at length the facts involved.

On the 3d of January, 1891, the defendant entered into a contract
with the Memphis Appeal Company, a corporation organized under the
laws of Tennessee, then engaged in publishing a newspaper, the
Memphis Appeal-Avalanche, in that state.   The contract read as fol-
lows:

                        "Memphis, Tenn., Jan. 3d, 1891.

    "S. C. Beckwith, 48 Tribune Bld'g, New York City—Dear Sir:  In considera-
tion of special efforts which you pledge yourself to make in our behalf to the
best of your efforts and ability, and, furthermore, in consideration of allowing
you nothing in the shape of salary, office rents, or traveling expenses, we
hereby authorize and appoint you our sole and exclusive agent for a term
of five years from September 1st, 1891, and sooner, if possible, on a plain
commission basis of twenty-five per cent. on all business for all that portion
of the United States north of a line running east and west with the southerly
boundary of Ohio, Missouri, embracing Cincinnati and St. Louis, including
these two points.  Applications for rate, space, etc., from aforesaid territory
to be referred to you, and in case we should make a deal direct with any
parties, agent, or advertisers from your territory (which, however, is not con-
templated), we will allow you the commission named upon same, and refer
it to you for collection.  You are to collect all bills, and render monthly state-
ments, and to be held responsible for all accounts, except where a concern
should fail through no fault of yours, and, in event of that, you are simply
to lose your commission, but not to be liable beyond that.  You are not to
represent any other morning paper in the state of Tennessee or Arkansas
without our consent in writing, but to do all you can in every way, and at all

times, within the above territory, to advance the interests of the Appeal-Ava-
lanche.                                    Memphis Appeal-Avalanche Company,
                                              "T. B. Hatchett, Bus. Manager.

"Accepted. S. C. Beckwith."

On the same day, and in consideration of the contract, a copy of which has just been given, the defendant entered into another contract with the Memphis Appeal Company, which read as follows:

"Memphis, Tenn., Jan. 3rd, 1891.

"The Memphis Appeal Company, Memphis, Tenn.—Gentlemen: In consideration of a contract this day entered into by and between us, I hereby agree to advance to you thirty thousand dollars ($30,000.00), as follows: $5,000 in cash on or before January 7th, $5,000 on or before the 12th of January, 1891, then $5,000 on the 26th of January, 1891, to take up your note now in the Nassau Bank of N. Y. for that amount. And $15,000 from time to time as you may advise me, and so desire. The amount named of $30,000.00 to be loaned you on the Appeal Company's notes, indorsed by W. A. Collier; and I am to be further secured by a deposit as collateral of an equal amount of the capital stock of your company, and which stock shall not be increased without my consent during the term of this loan; neither shall any incumbrance be placed upon same. Said loan and interest at six per cent. to be paid me in monthly installments by moneys coming into my hands from the advertising in your paper, in amounts, say $1,000 per month until paid.

"S. C. Beckwith.

"O. K. Memphis Appeal Company,
    "T. B. Hatchett, Business Mang'r."

Both of these contracts, so far as appears, were performed to the mutual satisfaction of the parties interested until September 30, 1893, when the Memphis Appeal Company became insolvent, and transferred by a deed of trust all its interest in the newspaper referred to, including plant, good will, subscription list, advertising, patronage, etc., to Robert J. Morgan and Andrew D. Gwynne, as trustees for the benefit of certain creditors. The trustees accepted the trust, and immediately brought an action against the Appeal Company, this defendant, and others, to procure a judgment directing them to carry into effect the transfer to them as provided in the deed; and on the day the action was commenced they procured the appointment of one William J. Chace receiver of all the property transferred, who, by the order appointing him, was expressly authorized to continue the publication of the newspaper above referred to. The receiver qualified, and on the 30th day of September, 1893, commenced, and thereafter continued, to publish the newspaper until the 16th of June, 1894, when, as will hereafter appear, the same was sold by order of the court. The defendant in this action had notice of the appointment of the receiver, and on the 5th of October following he filed a petition to remove the action to the circuit court of the United States for the Western division of the Western district of Tennessee upon the ground that as to him a separable controversy existed. This petition was granted, and thereafter the federal and state courts exercised concurrent jurisdiction in the case. On the day the defendant asked for such removal he notified the receiver that the contract above referred to with the Memphis Appeal Company was in force, and that he should insist upon its full performance. The receiver thereupon notified the defendant that he should not recognize such contract; and that, while he considered it his duty to carry out such advertising

contracts as were in course of completion in the current publication
of the paper, whether made by the company direct or through the de-
fendant as its agent, he should not, in so doing, recognize the defend-
ant in any way, and should claim all the revenues derived from publi-
cations made after his appointment.    At or near the time when this
notice was given, an action was commenced in the chancery court of
Tennessee by one Fink and others against the Appeal Company for
the purpose of winding it up as an insolvent corporation, and in that
action an order was entered on November 6, 1893, denying an applica-
tion to make the receiver a party defendant, and directing that the
action be sustained and prosecuted as a general creditors' bill for the
benefit of all creditors who might choose to claim its benefits or come
in under it.    Intermediate the commencement of the Fink action and
the entry of the order just referred to, other actions were brought
by various creditors, and for a similar purpose.    In January, 1894, all
the actions thus commenced, including the Morgan and Gwynne ac-
tion, were consolidated into one action; and on the 6th of April fol-
lowing a decree was made therein directing a sale of the property
transferred.    This decree recited that Chace was in possession as
receiver, and that "the court, being of the opinion   *   *   *   that the
value of said newspaper and property and the security of the com-
plainant's creditors, etc., has been and is being deteriorated and less-
ened under its contract by this court through its receiver, in that
the necessary costs and expense thereof exceed its income and earn-
ings,   *   *   *   and therefore it is ordered that the receiver   *   *   *
proceed to sell the Memphis Appeal-Avalanche, with all the rights,
privileges, benefits, franchises, etc., belonging to or in any way per-
taining to same;   *   *   *   [that] all accounts which may be or are
to become due to the receiver by reason of the operation of the news-
paper in his hands will pass to and be acquired by the purchaser at
this sale;   *   *   *   the purchaser at the sale herein ordered will
acquire the absolute title to all the property decreed to be sold free
from all claims, liens, and incumbrances whatever, save as provided
above as to the contract obligations of the receiver, and the proceeds
of the sale will stand in these causes in lieu and in place of the
property itself."    And a few days later an order was made in the
chancery and federal courts appointing one Clough and one McHenry
special commissioners to make the sale.    This they did on the 16th
of June of that year, they then selling to one Crawford, for the sum
of $65,200, all the property of the Memphis Appeal Company, includ-
ing the right, title, and interest of the receiver in the money due
from advertising done while the newspaper was operated by him; and
an order was subsequently entered in the state and federal courts
confirming the sale.    In 1896 a final decree was entered in the con-
solidated action, adjudging that the trust deed was valid, and direct-
ing that the creditors therein mentioned be first paid out of the pro-
ceeds of the sale theretofore made.    The decree also settled and de-
termined claims of other creditors, and directed the distribution of
remaining assets, among them including allowances, etc.    From this
decree it appears that the defendant herein had sought to obtain a
lien upon the proceeds of such sale by levy under an execution issued

on a judgment obtained against the Appeal Company, and had filed a cross bill in the consolidated action for the purpose of having an adjudication made in his favor to that effect. This is inferable from the fact that the decree declared that no lien was obtained by the levy, and dismissed the defendant's bill, with costs, but permitted an appeal therefrom to the supreme court. Subsequently such appeal was taken to the supreme court, and the judgment was modified, or reversed in part and in other respects affirmed. That portion of it which was reversed related almost entirely to the priority of liens, but it in no way changed or modified the decree of the lower court so far as the same affected this defendant's claim. As to the trust deed to Morgan and Gwynne, the appellate court held that it "is void upon its face, and is so adjudged. However, the court is of opinion that said deed was executed in good faith by all parties thereto; and the beneficiaries therein mentioned, so far as they may establish valid claims against the Appeal Company, will share in the distribution of the fund in court as general creditors." It, however, recognized the validity of the receiver's appointment and the sale made by him, by modifying the decree of the lower court, and holding "that the receiver is liable to the said Collier and wife for the reasonable rental value of the portion of said building occupied by him. * * * The purchaser, W. J. Crawford, having assumed this liability of the receiver, said Collier and wife will be awarded judgment against him therefor; * * * but this right of judgment against him shall not affect this right, which right is here adjudged to be paid out of the fund in court if necessary to this interest. The said liability of the receiver for rent is subject to any proper and legal offsets or counterclaims which said receiver or said Crawford may establish." Between September 30, 1893, when the receiver was appointed, and June 16, 1894, when the paper was sold, the receiver published in said newspaper certain advertisements upon orders obtained by the defendant and delivered to the paper prior to the appointment of the receiver. The value of these advertisements amounted in the aggregate to $3,902.74, which sum the defendant collected from the persons having such advertisements published, and refused to pay over the same to the receiver, Crawford, or to the plaintiff, Crawford's assignee. The defendant claimed the right to collect, hold, and apply this money on the indebtedness of the Memphis Appeal Company to him for money loaned under his contract with it dated January 3, 1891, above given. No question arises as to his commissions upon obtaining the orders for the advertising in question, or his right to hold such money for that purpose. The question presented is whether the defendant's contract with the Appeal Company gave him such a claim to and lien upon the money that he could collect and withhold it from the receiver. If so, then the judgment is right. If not, then the judgment must be reversed.

Upon the foregoing facts, it seems to me clear that the money collected and held by the defendant belonged to the receiver. It was earned by him while acting in that capacity. All the expenses incident to or connected with the publication of the advertisements were paid for by him, and he was entitled to all the proceeds therefrom.

The defendant did not have a lien upon this money. His contract did not purport to create or give him one, and it is not claimed that he acquired one in any other way. Upon the contract the defendant simply had the right, while acting as the agent of the Appeal Company, to retain out of moneys belonging to it and coming into his hands as such agent a sum not exceeding $1,000 per month until the indebtedness of the company was paid. But his agency was terminated when the receiver was appointed, and the money which he held belonged, not to the company, but to the receiver. The defendant, when the receiver was appointed, simply had a claim against the Appeal Company for money loaned; and he then stood in the same position, and occupied the same relation to the receiver and the assets in his hands, that other creditors did. Southern Exp. Co. v. Western N. C. R. Co., 99 U. S. 200. In the case just cited a contract was made between the express company and the railroad company by which the former loaned to the latter the sum of $20,000, in consideration of which the railroad company granted to the express company the right to do business over its road for a stated period. The contract contained this clause:

"The accounts for transportation to be made monthly, and the sum found to be due to said railroad company for transportation at the rate hereinafter specified shall be applied monthly toward the payment of said $20,000 until the whole sum, with interest, is paid; after which payments for transportation shall be made by said party of the second part monthly in cash."

The railroad went into the hands of a receiver before the loan had been fully repaid, and the express company sought to compel a specific performance of this contract by the receiver. The bill was dismissed, and the supreme court, in affirming the judgment of the court below, speaking through Mr. Justice Swain, said:

"The appellant has no lien. The contract neither expressly nor by implication touches that subject. It is not a license, as insisted by counsel. It is simply a contract for the transportation of persons and property over the road. A specific performance by the receiver would be a form of satisfaction or payment which he cannot be required to make. As well might he be decreed to satisfy the appellant's demands by money as by the services sought to be enforced."

To the same effect is Central Trust Co. v. Marietta & N. G. Ry. Co., 51 Fed. 15. There the Blue Ridge Marble Company entered into an agreement with the Marietta & North Georgia Railroad Company, whereby the latter agreed to haul marble for the former at a certain price, which was paid in advance. The marble was ready for shipment when a receiver of the railroad company was appointed. The receiver refused to recognize the contract, and the marble company then sought to compel him either to haul the marble or return the unearned freight charges. The application was denied, the court saying:

"To require the receiver to transport this marble to Marietta would be equivalent to requiring the receiver to pay them in money the amount of the freight from Nelson to Marietta; and this the court certainly could not do, inasmuch as they have no lien."

See, also, Farmers' Loan & Trust Co. v. Cape Fear & Y. V. R. Co., 73 Fed. 712.

Had the receiver refused to pay the commissions to which the defendant was entitled under the contract for obtaining the orders for the advertisements published, then another question would have been presented. No such claim, however, is made, presumably because the commissions have been paid. It seems clear, therefore, both upon principle and authority, that the defendant had no lien upon the moneys in question, and had no right to collect and retain the same. Such money belonged to the receiver, and was sold to Crawford, and by him assigned to this plaintiff, and he should have had judgment therefor.

I am also of the opinion that the plaintiff was entitled to recover upon another ground. The question here sought to be litigated was, in effect, settled and determined by the courts of Tennessee. Both the defendant and the receiver were parties to that litigation, and, of course, were bound by what was there decided. Not only was the decree of the chancery court of Tennessee, in so far as it directed a sale by the receiver, affirmed by the supreme court of that state, but that portion of the decree which provided that "all accounts which may be or are to become due to the receiver by reason of the operation of the newspaper in his hands will pass to and be acquired by the purchaser at this sale" was also affirmed. The supreme court recognized as valid the sale as theretofore made, and directed a distribution of the proceeds derived therefrom among certain creditors specified. It also affirmed the decree of the lower court, holding that the defendant herein did not acquire a lien upon such proceeds by virtue of the execution issued upon judgment obtained against the Appeal Company. It therefore seems to me that, inasmuch as courts of Tennessee have held, in litigation to which the defendant was a party, that the sale which included claims for advertising done by the receiver was legally made, and have directed a distribution of the moneys realized from such sale among certain creditors, the defendant cannot now be heard upon the question here presented. He has had his day in court, and, the result having been adverse to him, he cannot go before another tribunal, and litigate a question which was or could have been there determined.

It follows that the plaintiff's exceptions were well taken, and should be sustained, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., concurs. PATTERSON, J., concurs in result.

INGRAHAM, J. (dissenting). I cannot concur in the conclusion that the plaintiff is entitled to judgment. I think that the two letters of January 3, 1891, should be read together as constituting one agreement between the defendant and the Memphis Appeal Company. The agreement is contained in two letters, the first written by the Memphis Appeal Company to the defendant, which was accepted by the defendant, and by which the defendant was appointed the agent of the company for the term of five years, to be paid a commission of 25 per cent. on all advertisements procured over a certain territory, the defendant to collect all bills, and render monthly statements,

and to be responsible for all accounts, except where a concern should fail, in which event the defendant was simply to lose his commissions. The other letter was dated the same day, whereby the defendant, "in consideration of a contract this day entered into by and between us," agreed to advance $30,000 to the company, said loan and interest to be paid in monthly installments by moneys coming into his hands from the advertising in the company's paper, in amounts of $1,000 per month until paid. This letter was accepted by the Memphis Appeal Company. It is clear, it seems to me, that this loan of $30,000, which was to be paid only by moneys coming into the defendant's hands as the agent of the company from the advertisements procured by him for the company, was based upon the appointment of the defendant as the agent of the company, by which he was to receive the moneys paid for the advertising procured by him from the territory named, the repayment of the loan being secured by the company's agreement that the defendant should collect the proceeds of such advertisements, and should retain an amount, not to exceed $1,000 per month, in payment of the loan. It seems to me that this was in the nature of an equitable pledge of the receipts for inserting such advertisements as the defendant should secure, to be applied to the payment of the indebtedness, and that this corporation, having received the advertisements, and published them under the agreement, it could not terminate the contract, and receive the benefit of the advertisements procured by the defendant, without carrying out the contract on its part by allowing the defendant to receive the proceeds of such advertisements which were specifically pledged to him to repay the loan, as well as the right to receive the commissions for procuring the advertisements. It is quite evident that there was one entire contract verbally made between the parties, which was reduced to writing in the form of these two letters, and accepted by the parties to whom they were addressed. When a receiver of the corporation was appointed, he took the business of the corporation subject to such liens and other obligations as existed against the corporation, and he could not accept the benefits of the contracts made by the company, without also being subject to the obligations of the company under which the contracts were made. When, therefore, the receiver continued the publication of the paper, and inserted the advertisements procured by the defendant under his contract, he also assumed the obligation of the company as to the method of the payments to be made from the insertions of such advertisements contained in the contract by which the defendant was to collect the moneys coming due for the insertion of the advertisements; and, after deducting his 25 per cent. commission, he was to deduct a sum, not to exceed $1,000 per month, to be applied on account of the loan made. For the balance of the moneys received from such advertisements by the defendant over and above the commissions and the sum of $1,000 per month to be paid on account of the loan, the defendant was liable.

Nor do I think the judgment of the court of chancery of the state of Tennessee an adjudication which affects the right of the defendant. The adjudication in that case simply affected the rights of the parties at the time of the commencement of the action when the receiver was

appointed. It did not adjudicate, nor attempt to adjudicate, the right of this defendant in relation to the moneys received for advertisements inserted by the receiver after his appointment; and while, under the judgment, there would pass to the purchaser all moneys due to the receiver for the publication of the paper while in his hands, the judgment did not have the effect of determining what moneys were due to the receiver, or how much, if anything, the defendant owed him at the time of the sale. What passed to the purchaser at the sale from the receiver under this contract was the money that was due him from the defendant, but the adjudication had no relation to the determination of the amount that the receiver was entitled to from the defendant in consequence of his collections under this contract.

I think that the judgment should be affirmed.

O'BRIEN, J., concurs.