Argued October 16, reversed with directions November 21, 1951

# LYNCH ET AL. v. CLENDENEN
### 237 P. 2d 1084

*William R. Thomas* argued the cause for appellant and cross-respondent. On the briefs were Morley & Thomas, of Lebanon.

*John D. Galey* argued the cause for respondents and cross-appellants. On the brief were Galey & Galey, of Sweet Home, and Weatherford & Thompson, of Albany.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, WARNER and TOOZE, Justices.

WARNER, J.

Delmar J. Lynch and his wife, doing business as the L. & L. Lumber Company and the D. L. C. Lumber Company, a corporation (described in the complaint as an "associate" of the Lynches), bring this suit to compel specific performance of a contract made by and between the plaintiffs Lynch and the defendant, Leo Clendenen, on August 14, 1946.

For some time prior to that date, the defendant was the owner of timberland in Linn county, Oregon, from whence he supplied logs to the sawmill of the plaintiffs Lynch. He concluded that a larger Caterpillar would be necessary to enable him to continue his logging operations and solicited Lynch for a loan of $1,600 to enable him to acquire a machine. These negotiations resulted in the contract which plaintiffs seek to have specifically performed on the part of the defendant. This contract reads:

> "THIS AGREEMENT, Made and entered into this 14th day of August, 1946, by and between Leo Clendenen, of Holley, Oregon, hereinafter called the first party, and L and L Lumber Company, of Holley, Oregon, hereinafter called the second party,

"WITNESSETH: That the first party agrees to fall, buck, and deliver to the log pond of the second party, at Holley, Oregon, all of the good and merchantable saw timber, up to a 36 inch top, on the following described property, to-wit:

"* * * * [Description of land in Linn county, Oregon]

except as otherwise provided in this contract, and it is hereby agreed and understood by and between the parties hereto as follows:

"That the first party will deliver the above mentioned merchantable saw logs to the log pond of the second party, at Holley, Oregon, and shall receive therefor, from the second party, the market price therefor, according to mill scale thereof, and payment shall be made by the second party to the first party at the end of each week for all logs delivered under this contract during that week;

"That the second party shall be entitled to withhold from payments due the first party, for logs delivered hereunder, the sum of $4.00 per thousand board feet thereof, which said sum so withheld shall be applied to the payment of an existing debt owed by the first party to the second party in the amount of $1600 together with interest thereon at the rate of 6% per annum from date until paid;

"That the first party shall commence to deliver logs to the second party, under this contract, as soon as possible, and shall continue such delivery, without unnecessary interruption, until this contract is terminated; provided, however, that impossibility of the performance of this covenant by reason of weather conditions, strikes, or other acts of God shall not constitute a violation of this contract;

"That the $1600.00 above mentioned is advanced by the second party to the first party to purchase a 60 Caterpillar Tractor, and the said second party shall receive one-fifth (1/5) of the gross proceeds received by the first party from the operation of said tractor, and such sum shall be applied to the

payment of the said $1600.00, and interest, except, however, that the operation of the said Tractor by the first party in his own logging operation shall be exempt from the provisions of this paragraph;

"That the first party shall deliver the above mentioned logs to the second party as herein provided, free and clear of all liens or encumbrances;

"That this contract shall be terminated and shall expire automatically, without any further act or acts of the parties hereto, when the said sum of $1600.00, and interest thereon at the rate of 6% from date, shall be paid;

"That no modification of this contract shall be binding unless made in writing, signed by both parties, and attached hereto;

"That this contract shall be binding upon the heirs and assigns of the parties hereto;

"That this contract shall not be assigned by either party without the written consent of the other first being obtained and attached hereto.

"IN WITNESS WHEREOF, the parties hereto have hereunto set their hands this day and date first above written, in duplicate."

The parties thereafter entered into the performance of the agreement. This resulted in a reduction of defendant's original indebtedness to Lynch to the amount of $739.86, as of the time of defendant's tender, and had been accomplished by withholding from the purchase price the sum of $4 for each thousand board feet of logs delivered by the defendant. Later, a dispute arose between the parties. It appears that the plaintiffs Lynch had, some time in April, 1947, negotiated a sale of their milling interests and contracts to the plaintiff corporation but without first securing from Clendenen his written consent to the assignment of the Lynch interest in the contract which is the subject of this suit and as by that contract specifically required. Defendant, relying upon this breach by the

Lynches, refused to make any further deliveries of logs thereunder after April 29, 1947.

This action on defendant's part provoked the filing of plaintiffs' complaint for specific performance, the plaintiffs contending that they were entitled to a further delivery of additional logs from Clendenen in an amount sufficient to satisfy the balance due on the $1,600 loaned by L. & L. Lumber Company to defendant. They estimated that an additional 200,000 board feet would be necessary to accomplish that result. Plaintiffs also prayed for an order enjoining defendant from logging or delivering his logs to anyone else until the contract was fully and completely performed by him in this respect. Clendenen in his answer admitted a balance of $739.86 was due on the loan, alleged that his numerous previous tenders of that amount had been refused by plaintiffs and, therefore, again tendered the same into court. There is no dispute between the parties that this sum represents the balance due on the loan.

The lower court held that plaintiffs were entitled to a specific performance of the contract but found that after the filing of the complaint and before the trial, Clendenen had removed and disposed of all his logs from the property described in the contract, thereby rendering specific performance in that manner an impossibility. Therefore, the court gave plaintiffs a judgment against defendant in the amount of $1,236.50 representing "loss of profits" and a further judgment for $739.86, being the amount of the balance due on the loan. From that part of the judgment charging Clendenen with $1,236.50 in lieu of specific performance, the defendant appeals. Being dissatisfied with the sufficiency of that amount, plaintiffs have cross-appealed.

The defendant contends that under the contract, he had the right at all times to liquidate his indebtedness to plaintiffs Lynch by payment in any one of three ways, i.e., (1) from funds derived from the use of his tractor; (2) from a credit of $4 per thousand board feet derived from the delivery of his logs to plaintiffs; or (3) by the payment of monies derived from other sources. He argues that notwithstanding which one or any combination of such methods is used, the contract is automatically terminated when the original loan of $1,600, together with interest due thereon, is fully paid.

It is the position of plaintiffs that Clendenen is obligated by the contract to deliver to them enough additional logs to completely pay the balance due by plaintiffs withholding from the market price $4 per thousand board feet of the logs so delivered and that the defendant cannot avoid the duty to deliver logs to plaintiffs or terminate the contract by the use of funds derived from any other source, excepting such as might represent one-fifth of the gross proceeds derived from the use of defendant's Caterpillar when employed in operations other than his own logging operations.

■ The terms of the contract are clear and unambiguous. The controlling and significant provisions so far as our present inquiry is concerned may be summarized as follows: (1) defendant's covenant to sell and deliver logs to the L. & L. Lumber Company conditioned by the words , "except as otherwise provided in this contract," and followed by the express provisions for the contract's termination and the manner of the loan payment; (2) the methods for the liquidation of the debt, which are: (a) by L. & L. Lumber Company's withholding from log payments "the sum of $4.00 per

thousand board feet" with application to the debt, and (b) by the payment of "one-fifth (1/5) of the gross proceeds received by the first party [Clendenen] from the operation of said tractor" from operations other than his own logging operations; and (3) the provision reading: "* * * this contract shall be terminated and shall expire automatically, without any further act or acts of the parties hereto, when the said sum of $1600.00, and interest thereon at the rate of 6% from date, shall be paid."

The contract does not make any one method of debt payment exclusive. Clendenen is thereby expressly given the alternative of paying the entire debt in cash from the tractor earnings or out of the proceeds of the sale of his logs at the rate of $4 per thousand board feet, or partly from Caterpillar earnings and partly from log sales. The provision for liquidation through earnings from the Caterpillar operations negatives the suggestion of plaintiffs that the method of payment is therein limited to the credits of $4 per thousand board feet taken on log sales to plaintiffs. It overcomes the representation that the reception of cash from the defendant was not an equally acceptable medium for the payment of the loan debt, if Clendenen elected to retire it by cash tenders instead of through log sales. Moreover, there is no provision in the contract which, directly or indirectly, supports an inhibition against full payment by cash at any time from funds obtained by the defendant elsewhere than from the operations of the tractor. The prime objective of the agreement is the repayment of the $1,600 loan and interest. The delivery of the defendant's logs to plaintiffs is only an incidental advantage which accrued to the L. & L. Logging Company if and when the defendant delivered his logs to it. This delivery

is made uncertain and conditional by the words of reservation, ''except as otherwise provided in this contract,'' thus leaving to defendant the right to make payment with Caterpillar earnings instead of logs, or otherwise terminate the contract by any full payment of his debt at any future date, as he rightfully chose to do. The plain language of the contract will admit no other construction.

■ Neither party to a contract can compel its specific performance if the contract carries a provision for its termination upon the payment of a specified sum of money. This rests upon the principle that a contract must be such that a decree for its specific performance would not be rendered nugatory, as would be the case here, if the defendant would at any time after the decree terminate the agreement by payment of the loan and thus evade the decree's mandate. 4 Pomeroy, Equity Jurisprudence (5th ed.) 1045, § 1405b; Fry, Specific Performance (6th ed.) 44, § 94; 2 Restatement, Law of Contracts, 695, § 377. *Southern Express Co. v. Western North Carolina R. R.,* 99 U. S. 191, 200, 25 L. Ed. 319, construes a contract similar to the one here in that the obligation to render certain services by the railroad company could be terminated by the repayment of a loan which was the consideration for the promise. In that case the very strong assertion is made that ''A court of equity never interferes where the power of revocation exists.'' This court has heretofore declined to compel a specific performance when it would result in no more than a mere idle gesture. *Public Market v. City of Portland,* 171 Or. 522, 587, 130 P. 2d 624.

The defendant's tender of an amount sufficient to fully pay his loan terminated the contract. Nothing then remained to be specifically performed by defend-

ant and nothing could, therefore, be substituted by the court in lieu of specific performance. It follows that there is no foundation for the judgment of $1,-236.50 in favor of plaintiffs. Their claims under the contract were completely extinguished by the monies which defendant deposited in the court.

■ The judgment, insofar as it gives plaintiffs judgment against defendant in the amount of $1,236.50 and a judgment for plaintiffs' costs and disbursements, is reversed and, under the authority of § 10-920, O.C. L.A., a judgment should be entered against plaintiffs for defendant's costs and disbursements.