**COURT OF CHANCERY**
OF THE
**STATE OF DELAWARE**

ANDRE G. BOUCHARD
CHANCELLOR

Leonard L. Williams Justice Center
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted: July 25, 2017
Date Decided: July 31, 2017

Michael C. Hochman, Esquire
Monzack Mersky McLaughlin
  and Browder, P.A.
1201 N. Orange Street, Suite 400
Wilmington, DE 19801

Daniel A. O'Brien, Esquire
Venable LLP
1201 N. Market Street, Suite 1400
Wilmington, DE 19801

RE:   ***Windsor I, LLC v. CWCapital Asset Management LLC***
      Civil Action No. 12977-CB

Dear Counsel:

This letter constitutes the Court's decision on the motion of defendant CWCapital Asset Management LLC ("CWCAM") to dismiss the Complaint for Specific Performance, Injunctive, and Other Equitable Relief (the "Complaint") filed by plaintiff Windsor I, LLC ("Windsor"). For the reasons explained below, the motion to dismiss is granted.

## I.    Background[1]

Windsor is the owner of a commercial property located at 2201 Farrand Drive, Wilmington, Delaware (the "Property"). CWCAM is a special servicer that handles the default side of loan servicing for its affiliate, CWCapital LLC.

---

[1] The facts recited herein come from the Complaint and the documents appended thereto.

On or about December 27, 2006, Windsor and CWCapital entered into a Mortgage and Security Agreement in the principal amount of $7.4 million (the "Loan") to refinance the existing debt on the Property. The maturity date of the Loan was January 1, 2017.

On July 20, 2015, Windsor sent a letter to CWCapital, requesting that the Loan be transferred to special servicing because "Windsor is currently facing imminent default and will be unable to support its own debt service requirements."[2] Windsor was anticipating a default because the sole tenant for the Property for the past twenty years, a Best Buy store, was expected to leave the Property. On August 31, 2015, Windsor was notified that the Loan had been transferred to CWCAM as special servicer.[3]

From November 21, 2015, to February 9, 2016, Windsor and CWCAM negotiated the terms of a pre-negotiation agreement, the final version of which is dated February 9, 2016, and which was fully executed by March 23, 2016 (the "Pre-Negotiation Agreement").[4] From March to November 2016, Windsor and CWCAM engaged in a series of email exchanges, during which CWCAM requested certain information from Windsor and Windsor made two offers to

---

[2] Compl. ¶ 19 & Ex. D.

[3] Compl. ¶ 23 & Ex. E.

[4] Compl. ¶¶ 26-40, 48-49 & Exs. F, H-N, T.

purchase the Loan.[5]  On November 28, 2016, CWCAM rejected Windsor's most recent offer and made a counter-offer.[6]

On December 12, 2016, Windsor filed the Complaint asserting two claims. Count I seeks specific performance of the Pre-Negotiation Agreement.  Count II seeks injunctive relief to enjoin CWCAM from foreclosing on the Property "until after meaningful, good faith negotiations" occur under the Pre-Negotiation Agreement.[7]

On February 3, 2017, CWCAM filed a motion to dismiss the Complaint in its entirety under Court of Chancery Rule 12(b)(6) for failure to state a claim for relief.  Oral argument was held on July 25, 2017.

## II.    Analysis

The standards governing a motion to dismiss for failure to state a claim for relief are well settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate

---

[5] Compl. ¶¶ 50-52, 55-60, 71-75, 81-83 & Exs. U, W-BB, EE, FF, GG, II-KK.  Windsor also made an offer to purchase the Loan in December 2015, before the parties finalized the Pre-Negotiation Agreement.  Compl. ¶ 31 & Ex. G.

[6] Compl. ¶¶ 84-85 & Ex. LL.

[7] Compl. ¶ 112.

unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[8]

The Court is not required, however, to accept mere conclusory allegations as true or make inferences unsupported by well-pleaded factual allegations.[9] The Court also "is not required to accept every strained interpretation of the allegations proposed by the plaintiff."[10]

The Pre-Negotiation Agreement contains a Maryland choice of law provision.[11] Accordingly, as the parties agree, Maryland law governs the substantive aspects of the claims in this case.[12]

"Maryland courts follow the law of objective interpretation of contracts, giving effect to the clear terms of the contract regardless of what the parties to the contract may have believed those terms to mean."[13] As the Court of Appeals of Maryland has stated:

---

[8] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (internal citations omitted).

[9] *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 727 (Del. Ch. 1999), *aff'd sub nom. Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000) (TABLE).

[10] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006).

[11] Compl. Ex. T (Pre-Negotiation Agreement) ¶ 16.

[12] *SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 342 (Del. 2013) (law of the state chosen by the parties governs unless "the chosen state lacks a substantial relationship to the parties or transaction or applying the law of the chosen state will offend a fundamental policy of a state with a material greater interest").

[13] *Towson University v. Conte*, 862 A.2d 941, 946-47 (Md. 2004).

> A court construing an agreement under [the objective theory] must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.[14]

Count I fails to state a claim for relief for three separate reasons.

First, contrary to Windsor's contention, there is no "obligation to negotiate" under the Pre-Negotiation Agreement, and thus no obligation for CWCAM to specifically perform. Windsor identifies the following provision in the Pre-Negotiation Agreement as support for the alleged binding obligation to negotiate:

> The Parties acknowledge that they are about to commence negotiations (the "Negotiations") concerning the obligations owed to Holder by the Borrower and that they intend to discuss various courses of action which will include those that they believe may be in their mutual interests, with a view to a compromise and settlement by the parties.[15]

The plain and unambiguous meaning of the provision quoted above does not support the existence of a binding obligation to negotiate.

---

[14] *Dennis v. Fire & Police Empls.' Ret. Sys.*, 890 A.2d 737, 747 (Md. 2006).

[15] Compl. Ex. T (Pre-Negotiation Agreement) ¶ 1. Windsor is defined as the "Borrower." CWCapital LLC is defined as the "Original Holder," and the current holder of a promissory note evidencing the Loan is defined as the "Holder." CWCAM was acting solely in its capacity as "Special Servicer" on behalf of Holder.

The parties' intention not to create a binding obligation to negotiate is made even more clear when the Pre-Negotiation Agreement is read in its entirety in accordance with Maryland law.[16] In particular, paragraphs 4, 6, and 8 of the Pre-Negotiation Agreement provide, in relevant part, that:

> ***Borrower specifically acknowledges and agrees that Holder has made no promise, commitment, or representation whatsoever***, nor has Holder any obligation to Borrower to modify the terms of the Loan, offer any discounted payoff of the Loan, refinance the Loan, grant any forbearances, extend the payment terms of the Loan or extend any other financial accommodation to Borrower.
>
> . . .
>
> Since the Parties recognize that these Negotiations may not produce a mutually acceptable resolution of the overall problem, Borrower must be and is responsible for operating its business in a manner it deems appropriate. . . . ***Borrower acknowledges and agrees that Borrower may not in any way rely on, or claim reliance on, the Negotiations***.
>
> . . .
>
> ***Any party shall have the right to terminate the Negotiations at any time upon written notice to the other party, without obligation or liability by virtue of the commencement or termination of Negotiations hereunder or the passage of time associated therewith*** and upon such termination, the Parties' respective obligations to one

---

[16] *Cochran v. Norkunas*, 919 A.2d 700, 710 (Md. 2007) ("A recognized rule of construction in ascertaining the true meaning of a contract is that the contract must be construed in its entirety and, if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed.").

> another shall be only as set forth in the Loan Documents, except that the provisions of this letter agreement shall survive.[17]

Thus, when read as a whole, the Pre-Negotiation Agreement is a document that simply establishes rules to govern any discussions that may take place.[18] It does not obligate any party to negotiate or forbear from exercising remedies otherwise available.

Windsor's argument under the implied covenant of good faith and fair dealing is equally unavailing. "While it is true that a contract in Maryland gives rise to an implied duty of good faith and fair dealing," that duty

> does not obligate a [party] to take affirmative actions that the [party] is clearly not required to take under [the contract]. Rather, the duty simply prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract. In short, while the implied duty of good faith and fair dealing recognized in Maryland requires that one party to a contract not frustrate the other party's performance, it is not understood to interpose new obligations about which the contract is silent, even if inclusion of the obligation is thought to be logical and wise.[19]

---

[17] Compl. Ex. T (Pre-Negotiation Agreement) ¶¶ 4, 6, 8 (emphasis added).

[18] *See, e.g.*, Compl. Ex. T (Pre-Negotiation Agreement) at 1 ("Holder is agreeable to participate in such discussions provided that Holder and Borrower enter into this Agreement to mutually acknowledge the nature of, and certain understandings with respect to, the proposed discussions."); ¶ 1 (agreeing that discussions during the Negotiations shall not be admissible); ¶ 2 (agreeing that no agreement reached during the Negotiations shall have any effect unless reduced to writing, signed and delivered by all parties' authorized representatives); ¶ 5 (parties designating representatives for the Negotiation); ¶ 11 (Borrower agreeing to reimburse Holder and CWCAM for all costs and expenses incurred in pursuit of the negotiations).

[19] *Blondell v. Littlepage*, 991 A.2d 80, 90-91 (Md. 2010) (internal quotations omitted).

Because CWCAM clearly is not obligated to negotiate under the express terms of the Pre-Negotiation Agreement, Windsor cannot seek to impose such an obligation on CWCAM by invoking the implied covenant of good faith and fair dealing.

Second, even assuming, for argument's sake, that the Pre-Negotiation Agreement created some kind of obligation on CWCAM to negotiate in good faith, as Windsor asserts, such an obligation would be so inherently vague as to be unenforceable. Courts in Maryland have held that "[o]rdinarily, commercial agreements to negotiate upon terms and conditions to be decided are unenforceable."[20] After surveying numerous authorities, the Court of Special Appeals of Maryland determined that the "overwhelming weight of authority holds that courts will not enforce an agreement to negotiate a contract."[21] One of those authorities, a decision from Southern District of New York, is particularly apt here:

> While the power of the Court to fashion in appropriate cases an equitable remedy is great, it does not encompass the right to make an agreement for the parties. To decree . . . as plaintiff requests, would require the Court to enter into the realm of the conjectural. *An agreement to negotiate in good faith is even more vague than an agreement to agree.* An agreement to negotiate is amorphous and nebulous, since it implicates so many factors that are themselves

---

[20] *First Nat'l Bank of Maryland v. Burton, Parsons & Co., Inc.*, 470 A.2d 822, 828 (Md. Ct. Spec. App. 1984).

[21] *Id.* at 829.

indefinite and uncertain that the intent of the parties can only be fathomed by conjecture and surmise.[22]

Although Maryland courts have acknowledged that in some "limited situations, an agreement to negotiate in good faith may be upheld," such as where "the provision for good faith negotiations is part of an otherwise enforceable contract which itself provides terms or a frame of reference by which the duty to negotiate may be evaluated,"[23] this is not one of them. The Pre-Negotiation Agreement does not contain any agreed-upon terms or even a frame of reference for negotiations. To the contrary, it specifically states that "Borrower specifically acknowledges and agrees that Holder has made no promise, commitment, or representation whatsoever."[24] Therefore, even if one were to assume that the Pre-Negotiation Agreement created an obligation to negotiate, which I conclude is not the case, such an obligation would be unenforceable under Maryland law because of vagueness.[25]

---

[22] *Id.* at 828 (quoting *Candid Prods., Inc. v. Int'l Skating Union*, 530 F. Supp. 1330, 1336-37 (S.D.N.Y. 1982) (emphasis added)).

[23] *Helferstay v. Creamer*, 473 A.2d 47, 52-53 (Md. Ct. Spec. App. 1984)

[24] Compl. Ex. T (Pre-Negotiation Agreement) ¶ 4.

[25] Indeed, as I read Windsor's brief and as was explained during oral argument, Windsor's real grievance is not that the parties did not negotiate, but that the parties did not reach an agreement that Windsor desired. The Complaint itself alleges that the parties engaged in some negotiations, specifically that Windsor made at least two proposals, which CWCAM rejected, and that CWCAM made a counter-proposal right before Windsor filed this action. *See* Compl. ¶¶ 31, 44, 81-85.

Third, under Maryland law, specific performance is not available to enforce a contractual obligation terminable at will:

> It is well settled that a court of equity will not decree specific performance of any contract which one of the parties may rescind at will. The Court will not interfere in a case where, if it were to do so, one of the parties might nullify its action by exercising a discretion given him by the terms of the contract. It would manifestly be improper to impose upon the Court the task of investigating a controversy when the facts are such as to preclude any decree it may render from being conclusive.[26]

Paragraph 8 of the Pre-Negotiation Agreement unambiguously provides that "Any party shall have the right to terminate the Negotiations at any time upon written notice to the other party, without obligation or liability by virtue of the commencement or termination of Negotiations hereunder or the passage of time associated therewith."[27] Therefore, even if the Court were to order CWCAM to specifically perform the purported obligation to negotiate under the Pre-Negotiation Agreement, CWCAM still could terminate the negotiation at any time

---

[26] *Kahn v. Janowski*, 60 A.2d 519, 521 (Md. 1948). *See also S. Exp. Co. v. W. N.C.R. Co.*, 99 U.S. 191, 200 (U.S. 1878) ("A court of equity never interferes where the power of revocation exists."); Restatement (Second) of Contracts § 368(1) (1981) ("Specific performance or an injunction will not be granted against a party who can substantially nullify the effect of the order by exercising a power of termination or avoidance."); 25 Williston on Contracts § 67:50 (4th ed.) ("Equity will not enforce a contract specifically which, by its terms or by operation of law, the defendant may terminate immediately.").

[27] Compl. Ex. T (Pre-Negotiation Agreement) ¶ 8.

consistent with the terms of the agreement, rendering the Court's order a nullity.

Under these circumstances, specific performance is not an available remedy.[28]

Count II of the Complaint, which seeks an injunction enjoining CWCAM from foreclosing on the Property, is premised upon the existence of an enforceable obligation to negotiate. Because no such enforceable obligation exists, Count II fails to state a claim for relief.

---

[28] I am unpersuaded by Windsor's attempt to invoke the exception described in *Kahn v. Janowski* that "conditions and clauses of nullity are not to be executed according to the rigor of their terms so as to cause forfeitures." *Janowski*, 60 A.2d at 522. In *Janowski*, the Court of Appeals affirmed the trial court's refusal to order specific performance of a contract for the sale of real property that the seller had the contractual right to rescind within a specified period but remanded for the trial court to determine if the buyer—who had resided at the property for six years and made numerous improvements in reliance on the contract—was entitled to other relief. *Id.* at 520. No comparable injustice is alleged in this case. Windsor is a sophisticated commercial entity that negotiated a Pre-Negotiation Agreement with the assistance of counsel and, to repeat, the Pre-Negotiation Agreement unambiguously provides that Windsor "may not in any way rely on, or claim reliance on, the Negotiations." Compl. Ex. T (Pre-Negotiation Agreement) ¶ 6.

For the foregoing reasons, the Complaint is dismissed with prejudice.[29]  An implementing order accompanies this decision.

Sincerely,

*/s/ Andre G. Bouchard*

Chancellor

AGB/gm

---

[29] In its prayer for relief, Windsor also sought the "return" of $74,562.74, with interest, which CWCAM allegedly "wrongfully withheld."  Compl. at 23 (Prayer for Relief ¶ d). Windsor did not plead any cause of action in the Complaint, however, relevant to awarding such relief.  For the avoidance of doubt, dismissal of the Complaint is without prejudice to Windsor's ability to file a claim for damages to recover that sum in the future in a court of proper jurisdiction.